**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

JAMES MARTIN GRAHAM,

    Movant,

  v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL ACTION NO.: 2:18-cv-130

(Case No.: 2:17-cr-2)

**ORDER AND REPORT AND RECOMMENDATION**

  Movant James Graham ("Graham"), who is currently housed at the Federal Correctional Institution-Low in Coleman, Florida, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  Doc. 1.  The Government filed a Response, and Graham filed a Reply. Docs. 4, 9.  Graham also filed a "Motion for Production of Documents," an Affidavit, which is construed as a supplement to his § 2255 Motion, Motion for Default Judgment, Motion for Evidentiary Hearing, a Motion to Compel, and a Motion for Federal Subpoenas.  Docs. 12, 13, 14, 16, 17, 19.  For the reasons which follow, I **RECOMMEND** the Court **DENY** Graham's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Graham *in forma pauperis* status on appeal and a Certificate of Appealability.  I also **DENY** Graham's Motions for Production, for Default Judgment, for Evidentiary Hearing, to Compel, and for Subpoenas.  Docs. 12, 14, 16, 17, 19.

**BACKGROUND**

  Graham was indicted and charged with: distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Counts 1 and 2); possession of child pornography, in violation of 18

U.S.C. § 2252A(a)(5)(B) (Count 3); and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 4).  United States v. Graham, 2:16-cr-26 ("Crim. Case"), Doc. 1.  Graham faced statutory penalties of imprisonment of not less than 5 and not more than 20 years on counts 1, 2, and 4 and not more than 20 years on count 3.  Crim. Case, Docs. 2, 19.  However, if Graham had a prior conviction under federal or state law relating to aggravated sexual abuse, sexual abuse, or aggravated sexual conduct involving a minor, he faced a sentence of not less than 15 years and not more than 40 years in prison as to Counts 1, 2, and 4 (the § 2252A(a)(2) counts) and a sentence of not less than 10 years and not more than 20 years in prison on Count 3 (the § 2252A(a)(5) count).  Crim. Case, Doc. 19 at 2.

The Government and Graham reached a plea agreement.  Crim. Case, Doc. 29.  By that agreement, Graham agreed to plead guilty to Count 3, possession of child pornography, in violation of § 2252A(a)(5)(B).  Id. at 1, 2, 5.  Graham agreed there was a factual basis for the offense characteristics and agreed to not object to those adjustments in the calculation of his total offense level (a six-point total enhancement for images and videos of pre-pubescent minors (two points) and the material portraying sadistic or masochistic conduct and other depictions of violence (four points)).  Id. at 2, 5.  In return, the Government agreed to: not object to a two-level reduction for acceptance of responsibility, if recommended; make a motion for another one-level reduction for acceptance of responsibility; and move to dismiss the remaining counts in the indictment.  Id. at 4, 5.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing, during which Judge Wood allowed discussion relating to what Mr. Graham labeled "paragraph 3" of the plea agreement, which stated: absent a sexual conviction of a similar kind, the maximum statutory penalty Graham would face was 20 years' imprisonment; however, if Graham were found to have a prior conviction for aggravated sexual abuse, sexual abuse, or

abusive sexual conduct to a minor or ward, Graham would face a mandatory minimum of 10 years' imprisonment.  Crim. Case, Doc. 33 at 29–30.  At Graham's Rule 11 hearing, Mr. Allen, Assistant United States Attorney Greg Gilluly ("AUSA Gilluly"), and Judge Wood all stated on the record no one could guarantee, or even opine on, whether this provision would apply to Graham.  Id. at 30–31, 33–34, 37–38.

Charles Woodall, a task force officer ("TFO") with the Federal Bureau of Investigation ("FBI") Child Exploitation Task Force, provided the factual basis for the plea.  TFO Woodall was one of the lead investigators in this case and was alerted to an IP address in Darien, Georgia, during his monitoring of the internet and "various networks where child pornographers tend to hang out and deal."  Id. at 39.  TFO Woodall testified he made downloads of child pornography videos and pictures from this Darien IP address and learned investigators in an FBI office in Texas were doing the same, so he and the other investigators worked together and realized both offices were targeting the same IP address—an address that belonged to Graham.  Id.  After applying for and receiving approval for a search warrant for the property address associated with the Darien IP address, TFO Woodall stated he learned Graham had moved to Brunswick.  TFO Woodall also stated he began getting downloads of "the same type files and some of the same files[,] along with the same serial numbers and the same programs in Brunswick, Georgia."  Id. at 40.  Once TFO Woodall obtained the IP address for this location, it came back as being registered to Carol Kaufman, Graham's girlfriend.  Id.  TFO Woodall obtained a search warrant for the Brunswick address.  Graham informed investigators Ms. Kaufman had nothing to do with the situation, he was willing to speak to agents about how long he had been looking at child pornography, and he had been in prison for child molestation.  Id. at 40–41.  Graham told agents about the BitTorrent program and his searches for videos and pictures using the term "PTHC,"

which means "pre-teen hardcore."  Id. at 41.  TFO Woodhall testified investigators were able to verify as true almost everything Graham told them.  Id. at 41–42.  A forensic examination of two computers—a desktop and a laptop—revealed the presence of "at least 87 Torrent files" containing child pornography, the majority of which involved children under the age of 11 or 12 who were subjected to "acts of bondage, sadomasochistic behavior[,] and just extremely violent acts."  Id. at 42.  Graham did not dispute any of TFO Woodall's testimony and admitted to the truth of it.  Id. at 45.

Judge Wood accepted Graham's guilty plea and adjudged him guilty of Count 3 in the indictment.  Id.  Judge Wood directed the United States Probation Office to prepare a Pre-Sentence Investigation Report ("PSR").  Id.

In the PSR, the probation officer determined Graham's base offense level was 18.  PSR, ¶ 16 (citing U.S.S.G. § 2G2.2(a)(1)).  The probation officer assigned several specific offense characteristics, resulting in a 20-point level increase, or an adjusted offense level of 38: (1) a two-point increase because the offense involved images and videos of pre-pubescent minors; (2) another two-point increase because Graham distributed pornographic images through a file sharing network; (3) a four-point increase because the material portrayed sadistic, masochistic, or other depictions of violence; (4) a five-point increase because Graham engaged in a pattern of activity involving the sexual abuse or exploitation of minors; (5) a two-point increase because Graham used a computer to download and possess these pornographic images; and (6) a five-point increase due to the offense involving the equivalent of 4,050 images of child pornography, or 600 or more images under the Sentencing Guidelines.  Id. at ¶¶ 17–22.  The probation officer also assigned a three-point level reduction based on Graham's acceptance of responsibility, for a total offense level of 35.  Id. at ¶¶ 28, 29.  The probation officer assigned three criminal history

points to Graham based on his Michigan conviction for habitual offender-sexual criminal conduct.[1]  Id. at ¶ 35.  Graham had previously been convicted in Michigan of second degree criminal sexual conduct after he molested his daughter, but that conviction was not assigned any points for criminal history calculation purposes due to the age of that conviction.  Id. at ¶ 33 (citing U.S.S.G. § 4.A1.2(e)(3)).  Graham had an adjusted offense level of 35 and his criminal history category was II, resulting in an advisory Guidelines' range of 188 to 235 months' imprisonment.  Id. at ¶ 37, 59.  Because Graham had a prior conviction, his statutory minimum sentence was 10 years in prison, with a 20-year statutory maximum.  Id. at ¶ 58 (citing § 2252A(a)(5)(B), (b)(2)).

After hearing Mr. Allen's objections to the probation officer's finding as to the number of images and the application of those images within the advisory Guidelines, Judge Wood overruled all objections and adopted the probation officer's factual statements and applications.  Crim. Case, Doc. 42 at 3–11.  Judge Wood determined Graham had a total offense level of 35 and a criminal history category of II, resulting in an advisory Guidelines' range of 188 to 235 months in prison.  Id. at 11.  Judge Wood noted, by statute, Graham faced a minimum of 10 years' and a maximum of 20 years' imprisonment.  Id. at 11–12.  Mr. Allen stated Graham felt he (Mr. Allen) had misled him about the images for which he would be responsible, although Mr. Allen acknowledged he and Graham were put on notice of this responsibility during the Rule 11 hearing.  Id. at 12–14.  Judge Wood allowed Graham to address the Court, at which time he questioned the "arbitrary number[]" assigned to the images.  Id. at 16–17.  After consideration of the PSR, the factors listed in 18 U.S.C. § 3553, and what Mr. Allen, Graham, and the AUSA

---

[1]     As to the Michigan charges, Graham pleaded guilty to and was convicted of second degree sexual conduct and habitual offender-criminal sexual conduct charges, but the sentencing court vacated count 1.  PSR, ¶ 35.

stated during the sentencing hearing, Judge Wood sentenced Graham to a 188-month term of imprisonment.  Id. at 17; Crim. Case, Doc. 36.  Judge Wood explained she found no reason to depart from the advisory Guidelines' range due to Graham having possessed 54 videos containing child pornography depicting minors, some as young as four years old and some depictions of rape, and Graham's two prior convictions for "abusive sexual conduct" with minors.  Crim. Case, Doc. 42 at 17–18.  Judge Wood reminded Mr. Allen of his post-conviction obligations as to Graham.  Id. at 21–22.

Mr. Allen stated he had discussed post-conviction obligations with Graham the night before the sentencing proceedings.  Id. at 22–23.  In addition, Mr. Allen filed a post-conviction consultation certificate stating he fully explained the appellate process with Graham, advised Graham of the advantages and disadvantages of filing an appeal, and asked Graham about whether he wanted to file an appeal.  Crim. Case, Doc. 35.  In light of this discussion, Graham decided not to file an appeal; Graham and Mr. Allen both signed this certificate.  Id.  Graham did not file a direct appeal.

Graham has now filed his § 2255 Motion to challenge his sentence.  Doc. 1.  This Motion is ripe and ready for review.  Docs. 1, 4, 9.

## DISCUSSION

## I.   Whether Counsel Rendered Ineffective Assistance

Graham alleges his counsel was ineffective because he specifically asked Mr. Allen to file a notice of appeal on his behalf, but Mr. Allen did not do so.  Doc. 1 at 5.  Graham states he wanted to appeal the factual assertions found in the PSR and his sentence.  Id.  Graham also states Mr. Allen failed to investigate matters subject to suppression before counseling Graham to enter a guilty plea.  Id. at 8.  Additionally, Graham asserts Mr. Allen did not object to the number

of images used to calculate his sentence or the method of calculating the images number.  Id. at 11.

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001), and on appeal, Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at

1312–13.  "The likelihood of a different result must be substantial, not just conceivable."

Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S.

at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."

Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is

on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that

counsel's performance was unreasonable, and that []he was prejudiced by that performance."

Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of

counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct."  Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can

properly prevail on the ground of ineffective assistance of counsel are few and far between."

James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11,

2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States,

Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v.

Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of

competence expected of attorneys, a movant can obtain relief only if the error caused actual

prejudice.  Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner

must show "there is a reasonable probability that but for the attorney's unprofessional errors, the

result of the proceeding would have been different."  Armstead v. Scott, 37 F.3d 202, 207 (5th

Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the

outcome of the proceedings.  Strickland, 466 U .S. at 694.  "The likelihood of a different result

must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).

### A.      During Pre-Plea Proceedings

Graham contends Mr. Allen did not conduct any pre-trial discovery and was unaware

"damaging evidence might be subject to suppression."  Doc. 1-1 at 6.  Graham states he asked

Mr. Allen to obtain subpoenas, but Mr. Allen did not; if he had, the Court would have ordered

the FBI to produce the relevant search warrants.  Id.  According to Graham, the search warrants

involved multiple venues—Georgia, Texas, and Oklahoma—and the multiple venues involved

removed this case from the issuing judge's jurisdiction.  Id.

Graham also states he believes there "is a reasonable possibility" the FBI's wiretap

warrant affidavits either do not exist or are defective, resulting in this Court's lack of jurisdiction

to hear the case.  Doc. 13 at 1.  Additionally, Graham states the FBI investigator admitted to

investigating Graham's internet usage from September 2016 through December 2017, which was

prior to the investigator having obtained a warrant.  Id. at 2.  Graham avers the Government

failed to supply Brady material when it was requested at the Rule 11 hearing.[2]  Id. at 3.  Further,

Graham asserts he has requested information from the FBI via a Freedom of Information Act

("FOIA") request, but the FBI denied his request based on the waiver provision contained in his

plea.  Id. at 4.

---

[2]      Graham contends no Brady materials were produced at the Rule 11 hearing, even though they
were requested.  Doc. 13 at 3.  Graham does not identify what these Brady materials are or that any such
material were exculpatory in nature.  Brady v. Maryland, 373 U.S. 83, 87 (1963) ("[T]he suppression by
the prosecution of evidence favorable to an accused upon request violates due process where the evidence
is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution.").
What is more, neither Graham nor Mr. Allen made any Brady disclosure requests at the Rule 11 hearing.
Crim. Case, Doc. 33.  The only materials discussed at the Rule 11 hearing were the discovery materials
the Government already provided to Mr. Allen and which Graham admitted to already having seen.  Id.

The Government states there were no grounds for suppression, and if Mr. Allen had filed any motion for suppression, this could have jeopardized Graham's ability to negotiate the plea agreement.  Doc. 4 at 15–16.  The Government contends without a plea agreement, Graham's sentence exposure was at least 15 years and up to 40 years in prison.  Id. at 16.  The Government contends Graham testified during the Rule 11 hearing he was satisfied with Mr. Allen's representation, other than during the bond hearing.  Id.

### 1.   *Graham's guilty plea bars pre-trial ineffective assistance claims.*

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional that defendant could not raise double jeopardy claim on collateral attack following guilty plea).  Pertinently, a "knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea."  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).

Graham's claim Mr. Allen was ineffective for failing to file a motion to suppress is precluded because Graham entered a knowing and voluntary guilty plea.[3]  Graham does not

---

[3]   Graham does not argue his plea was not entered into knowingly and voluntarily.  However, the Court briefly addresses any such potential assertion to reach the question of whether Graham's knowing and voluntary plea bars Graham's ineffective assistance claims based on Mr. Allen's pre-plea performance.  After Judge Wood discussed the purpose of the Rule 11 proceedings, Graham's background, what the Government would have to prove to show Graham was guilty of the charged conduct, the rights Graham was giving up if he chose to plead guilty, and Graham's objections to the statutory sentencing range and after having the Government summarize the material provisions of the plea agreement, Judge Wood found Graham's offer to plead guilty to count 3 of the indictment was

claim Mr. Allen's failure to file a motion to suppress affected the voluntariness of his plea.  <u>See</u> <u>Menchaca v. Davis</u>, Civil No. SA-18-CA-01272, 2019 WL 4702633, at *4 (W.D. Tex. Sept. 25, 2019) (noting allegation of ineffective assistance of counsel for failure to file a motion to suppress before plea agreement reached did not relate in any way to voluntariness of plea).  In addition, Graham does not set forth any basis for a motion to suppress Mr. Allen could have advanced.  <u>United States v. James</u>, CR416-085, CV419-026, 2019 WL 1212949, at *2 (S.D. Ga. Feb. 7, 2019) ("[C]onclusory claims—unsupported by any facts or argument of any kind—do not entitle a movant to § 2255 relief.") (alteration in original) (citing cases).  To be clear, Graham fails to allege any search warrants or affidavits were deficient in any manner such that the validity of the search warrants could be called into question or would in any way support an assertion Graham's plea was not knowing and voluntary.

### 2. *Even if Graham's pre-plea ineffective assistance claims were not barred, they are without merit.*

Further, even if Graham had shown Mr. Allen rendered deficient performance because his plea was not voluntary and knowing, Graham cannot show this alleged deficient performance resulted in prejudice to him.  Graham states nothing—other than his own self-serving, unsupported contentions—that suggests the warrant affidavits do not exist or were defective or that Mr. Allen did not receive these materials.  Graham does not set forth any allegation revealing why any evidence would have been suppressed if subpoenas had been issued, if the issuance of any subpoenas would have been the correct procedure to employ, or the Government failed to provide the affidavits and search warrant applications to Mr. Allen.  Indeed, Mr. Allen informed Judge Wood at the Rule 11 proceedings he and Graham had "gone over the search

---

"knowing[]" and "voluntary."  Crim. Case, Doc. 33 at 38.  Thus, Graham's entry of a guilty plea bars any ineffective assistance claim relating to Mr. Allen's assistance during the pre-plea stage.  The Court addresses Graham's arguments, nevertheless, for completeness.

warrant umpteen times."  Crim. Case, Doc. 33 at 20.  Mr. Allen also informed Judge Wood he

had a copy of everything the Government had provided to him and would ask the Government

for anything Mr. Graham wanted that he did not have and was prepared to give Graham copies of

these items.  Id. & at 19.  In addition, Judge Wood advised the United States Marshal should give

Graham and Mr. Allen time to review "that arrest warrant and anything else [Graham has]

requested to see from that file."  Id. at 20.  However, Judge Wood also stated it was up to

Graham if he wanted to look at the discovery file.  Id.  In addition, Judge Wood offered to allow

Graham a chance to "look at" and "study" the discovery packet before she accepted his plea, and

Graham responded he would proceed with his plea and he had already looked at the folder.  Id. at

36–37.

In sum, Graham cannot show Mr. Allen was ineffective for failing to subpoena FBI

warrants.  It does not appear Mr. Allen needed to do so, as the Government provided him with all

discovery materials it had.  Graham does not set forth any allegations indicating any failure to

see the FBI search warrant documents materially affected his decision to plead guilty to Count

three of the indictment.[4]  The Court should **DENY** this portion of Graham's § 2255 Motion.

### B.    Assistance During Sentencing

Graham argues Mr. Allen did not object to the two-point enhancement for distribution of

video images, even though there were no images contained in a shared folder or made available

to the public, and the distribution counts were dismissed.  Doc. 1-1 at 1.  In addition, Graham

contends Mr. Allen did not review or object to the factual basis for the five-point enhancement

for engaging in a pattern of activity under U.S.S.G. § 2G2.2(b)(5), which is only applicable if a

---

[4]       During the Rule 11 hearing, Graham stated Mr. Allen should have been able to obtain subpoenas
to serve upon the Glynn County Detention Center for the complaint, arrest warrant, and affidavit.  Crim.
Case, Doc. 33 at 18–19.  It appears Graham has abandoned any ineffective assistance claim based on this
argument by not raising it in his § 2255 Motion.

defendant has more than one conviction of similar type.  Id. at 1–2.  Graham contends Mr. Allen failed to obtain the Shepard documents regarding his previous convictions.  Id. at 6.

The Government responds that Graham's claim is procedurally defaulted and that any argument relating to the Sentencing Guidelines is not cognizable in § 2255 proceedings, given the advisory nature of the Guidelines.  Doc. 4 at 19.  In the alternative, the Government asserts any argument regarding the Guidelines is without merit.  First, the two-point enhancement for distribution of video images was valid because Graham "unquestionably" distributed child pornography, as FBI agents were able to download images, and Graham installed a peer-to-peer file sharing program.  Id. at 20.  Second, the five-point enhancement for pattern of activity was supported by Graham's two previous convictions and his admission of viewing child pornography after his release from prison in 2010 at least twice a week.  Id. at 21–22.  Third, the number of images was a conservative number calculated using the Sentencing Guidelines, which a forensic examiner divided into playable and non-playable categories, and every video is the equivalent of 75 images.  Id. at 23.  As for Graham's assertion relating to the Shepard documents, the Government notes Graham's certified convictions are sufficient to establish the nature of his previous convictions.  Id. at 16.

### 1.   *Sentencing Proceedings.*

Judge Wood addressed Graham at the beginning of the sentencing hearing and asked whether he had had the chance to read, review, and discuss the PSR and its addendum with Mr. Allen.  Crim. Case, Doc. 42 at 2.  Graham confirmed he had.  Id. at 3.  Judge Wood asked if there were any remaining objections to the probation officer's factual statements in the PSR or his application of the advisory Guidelines.  Mr. Allen spoke to Judge Wood concerning two objections to the PSR: the two-point enhancement based on the number of images under

U.S.S.G. § 2G2.2(b)(7)(D) and the five-point enhancement based on "pattern of activity" under U.S.S.G. § 2G2.2(b)(5). Id. at 3–4. Mr. Allen argued the 75 images equivalency for the videos was arbitrary, but Judge Wood found the probation officer correctly addressed the equivalency and overruled the objection. Id. at 10–11. Judge Wood heard from the Government and Graham, as well. Id. at 15–17.

After consideration of what occurred at the sentencing hearing, the PSR and its addendum, and the factors set forth in 18 U.S.C. § 3553, Judge Wood sentenced Graham to 188 months' imprisonment. Id. at 17. Judge Wood noted she found no reason to vary or depart from the advisory Guidelines' range and Graham had earned a "not insignificant sentence." Id. at 17–18. Judge Wood explained this sentence was based on Graham having possessed 54 videos containing child pornography, including minors as young as four years old and some depictions of rape, and his criminal history includes two prior convictions "for abusive sexual conduct with a minor." Id. at 18.

### 2.    *Objection to distribution enhancement.*

Graham argues Mr. Allen did not object to the two-point enhancement for distribution of video images, even though there were no images contained in a shared folder or made available to the public and the distribution counts were dismissed. Doc. 1-1 at 1. Although Mr. Allen did not object to two-point enhancement for distribution through a file share network under U.S.S.G. § 2G2.2(b)(3)(F), Judge Wood would have almost certainly overruled this objection. At the Rule 11 hearing, TFO Woodall testified he monitors the internet and various networks "where child pornographers tend to hang out and deal." Crim. Case, Doc. 33 at 39. TFO Woodall also testified he and agents with an FBI office in Texas were making downloads from the same IP address in Darien, Georgia, which was associated with Graham, and TFO Woodall later received

downloads of the same types of files and the same files from an IP address in Brunswick, Georgia, which was registered to Graham's girlfriend. Id. at 39–40. TFO Woodall further testified Graham admitted he had used the BitTorrent program, which is a peer-to-peer sharing network, to download child pornography images. Id. at 41. Graham admitted to the truth of TFO Woodall's testimony and did not dispute any of it. Id. at 45. In addition, the probation officer gave a description in the PSR of Graham's conduct, which included his use of the BitTorrent program to download and share images of child pornography. PSR, ¶¶ 4–6, 9.

Thus, Graham cannot show deficient performance or prejudice based on Mr. Allen's failure to raise this objection. Any such of objection would have been wholly without merit. The Court should deny this portion of Graham's § 2255 Motion.

### 3.    Objection to pattern of activity enhancement.

Equally unavailing is Graham's argument Mr. Allen was ineffective for failing to request Shepard documents at sentencing. As noted above, Judge Wood stated Graham had two prior convictions "for abusive sexual conduct with a minor." Crim. Case, Doc. 42 at 18. The probation officer noted in the PSR records indicate Graham pleaded guilty in Michigan to one count of the lesser included offense of second degree criminal sexual conduct in 1985 based on his sexual abuse of his daughter and in 1996, also in Michigan, of criminal sexual conduct in the second degree and being a habitual offender for having a second criminal sexual conduct charge after sexually abusing his roommate's young daughter. PSR, ¶¶ 33, 35. While § 2G2.2(b)(5)'s "pattern of activity" does mean "any combination of two or more separate instances of the sexual abuse . . . of a minor by the defendant," § 2G2.2 appl. n.1, as noted above, Judge Wood specifically found Graham's two State of Michigan convictions involving abusive sexual conduct with a minor to be qualifying convictions for purposes of this enhancement.

Any failure to ask for the <u>Shepard</u> documents would have had no impact on Judge Wood's ruling on Mr. Allen's objection. While the Government did not provide copies of Graham's prior convictions due to their graphic nature, it represents the copies are certified, and the certified copies were provided to Graham in discovery. Doc. 4 at 16 n.3. Graham offers nothing to contradict this representation. And the probation officer recounted the factual bases for Graham's prior convictions in the PSR, presumably based on court documents. PSR, ¶¶ 32, 33. Even if Mr. Allen had been deficient, Graham cannot show he was prejudiced by any failure to ask for these documents at sentencing. Graham cannot satisfy both prongs of the <u>Strickland</u> test, which is fatal to his contention. The Court should deny this portion of Graham's § 2255 Motion.

### 4.    *Objection to number of images.*

At sentencing, Mr. Allen objected to the attribution of 75 images per video file, arguing the number attributed is arbitrary based on all of his research. Crim. Case, Doc. 42 at 4. Mr. Allen stated he could not find anything explaining the Sentencing Guidelines' note regarding the attributable images. <u>Id.</u> at 5. Mr. Allen also argued possession of child pornography—to which Graham pleaded guilty—is a specific intent crime, allowing the person charged "to know each and every image, whether it's with that 75 [images], if it goes to punishment." <u>Id.</u> Mr. Allen acknowledged the presence of the plea agreement, which did not include the argument about the 75 images he was making, and noted he did not want to "do anything that would show any disrespect to the agreement." <u>Id.</u> at 5–6.[5] Mr. Allen stated he did not want to make his

---

[5]    When pressed, Mr. Allen informed Judge Wood his objection to the number of images at the sentencing hearing was not the same as his written objection to the images in the Addendum to the PSR. Crim. Case, Doc. 42 at 6–7. In the Addendum, Mr. Allen objected to the number of images, stating: "The defendant maintains that paragraph 22 is not supported by the agreed upon facts of this case. Although not specifically stated in the plea agreement, it is counsel's recollection that the Government agreed to an enhancement . . . [of] at least 150 images, but fewer than 300 images, when Mr. Graham initially orally

arbitrariness argument as a written request for a variance out of fear Graham would lose his acceptance of responsibility but made the objection at the sentencing hearing, noting he did not "think" the 75 images equivalent was "fair." Id. at 10. Judge Wood responded, "All right, and, Mr. Allen, you will not be surprised that I will have to overrule that objection and find that the probation officer has correctly applied the guidelines as a result of the number of images, and the equivalency that's contained in the guidelines is correctly addressed by the probation officer in the [PSR]." Id. at 10–11. When Judge Wood provided Graham with the opportunity to address the Court, he also objected to the 75 image equivalency, as he felt this number was arbitrary. Id. at 16–17. In addition, Graham stated he could not have viewed child pornography since 1990, as the Government contended, because technological advances had not been made to allow for that. Id. Graham noted he did not have internet access until 2014 and, had he downloaded images twice a week, as alleged, there would have been "a lot more images than what there [were] on the computer." Id. at 17.

Mr. Allen argued on Graham's behalf during the sentencing hearing regarding the five-point enhancement for the number of images—specifically arguing the 75 image equivalency for videos was arbitrary—but Mr. Allen was unsuccessful. Graham himself raised an objection to the number of images, and he, too, was unsuccessful. Any assertion by Graham that Mr. Allen did not object to the enhancement based on the number of images is not only contradicted by the record, it is also without merit. The Court should deny this portion of Graham's § 2255 Motion.

_____

agreed to plead guilty." Add. to PSR, p. 1. Mr. Allen noted during the sentencing he was withdrawing this portion of his objection to the PSR. Crim. Case, Doc. 42 at 6. In response, Judge Wood observed, "Even if you were to stand on [that portion of your objection] and [were] not withdraw it, I would, of course be duty-bound to overrule that objection." Id. at 6–7. Judge Wood noted, in addressing any argument there was a side agreement or promise made, "Actually at the Rule 11, there is no confusion stated, and it was fairly clear how many files we were talking about, so to the extent this is some sort of chance to try to construct some ineffective assistance of counsel—. . . . you were not ineffective at the Rule 11." Id. at 8.

In sum, the evidence of record concerning the sentencing proceedings clearly establishes Graham cannot show deficient performance on Mr. Allen's behalf or that he was prejudiced by any such performance during sentencing proceedings.  Mr. Allen cannot be deemed ineffective for failing to raise meritless arguments at sentencing.  Elkins v. United States, Civil Action No. 2:18-cv-10, Case No. 2:15-cr-22, 2020 WL 7684968, at *12 (S.D. Ga. Oct. 28, 2020) (quoting Jones v. Sec'y, Dept' of Corr., 487 F. App'x 563, 568 (11th Cir. 2012), in turn citing United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000)), adopted by 2020 WL 7388627 (S.D. Ga. Dec. 16, 2020).  Nor can Mr. Allen be deemed ineffective for being raising unsuccessful argument that was inconsistent with the plea agreement provisions and other evidence of record, i.e., Mr. Allen cannot be deemed ineffective for raising challenges the Court rejected.  Mr. Allen expressly argued against Graham receiving at least seven points in enhancements, as discussed. Further, Graham admits he has one qualifying, prior conviction.  Doc. 1-1 at 2 ("Succiently [sic], Mr. Graham has only one qualifying prior conviction, an offen[s]e which occurred in 1996.").[6] Thus, Graham is not entitled to relief on this ground, and the Court should **DENY** this portion of Graham's Motion.

---

[6]     The 1996 offense Graham references is his conviction for habitual offender-second conviction-criminal sexual conduct against the three-year old daughter of his roommate.  PSR, ¶ 35.  To the extent Graham wishes to argue his 1985 conviction cannot count for purposes of his § 2G2.2(b)(5) enhancement because that conviction was attributed no criminal history points due to its age under U.S.S.G. § 4A1.2(e)(3), such an argument fails.  See United States v. Hall, 965 F.3d 1281, 1289 (11th Cir. 2020) (finding sentence of 480 months for § 2252A(a)(2) and (b)(1) offense substantively reasonable, even without defendant having any criminal history points under § 4A1.2(e)(3) because his previous convictions "were too old to be counted" but with § 2G2.2 enhancements (including the five-point enhancement under § 2G2.2(b)(5) based on those 2002 convictions)); see also § 2G2.2(b)(5), app. n.5 ("A conviction taken into account under this subsection (b)(5) is not excluded from consideration of whether than conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History).").

**C.     Claims Related to Appeal**

Graham asserts Mr. Allen failed to advise him to file an appeal relating to the erroneous seven points in offense level enhancements he received.  Doc. 1-1 at 2.  Graham states he asked Mr. Allen to file a notice of appeal on his behalf on the day of his sentencing, prior to leaving the courthouse, based on Graham's view that enhancements were improperly applied at sentencing.  Id. at 3.  Graham alleges he asked Mr. Allen why he (Mr. Allen) allowed the Court to use incorrect information without objection, but Mr. Allen did not answer his questions.  Graham also alleges Mr. Allen simply handed him some forms but did not discuss the benefits or adverse consequences of filing an appeal.  Id.  Additionally, Graham contends he would not have agreed to enter a plea agreement with a waiver of appeal provision.

The Government states the record contradicts Graham's claims regarding the filing of a notice of appeal.  Doc. 4 at 28.  In fact, the Government notes Graham voluntarily waived his right to appeal through his plea agreement and instructed Mr. Allen not to file an appeal.  Id.  The Government also notes Graham and Mr. Allen signed a post-conviction certification to memorialize Graham did not wish to file an appeal after consulting with Mr. Allen about the advantages and disadvantages of doing so.  Id.

It is well-settled that waiver of appeal provisions in plea agreements are enforceable if the waivers are knowing and voluntary.[7]  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)); Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005).  To establish the waiver was made knowingly and voluntarily, the government must show either (1) "the district court specifically

---

[7]      "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence.  United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993).  Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.  Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

questioned the defendant" about the waiver during the plea colloquy, or (2) the record makes clear that "the defendant otherwise understood the full significance of the waiver." United States v. Salgado, 799 F. App'x 806, 807 (11th Cir. 2020); Johnson, 541 F.3d at 1066; see also Medina v. United States, 597 F. App'x 583, 586 (11th Cir. 2015) (same). The district court must clearly convey to the defendant the circumstances under which he is giving up the right to appeal. Salgado, 799 F. App'x at 807 (internal citation omitted). "An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

The Eleventh Circuit Court of Appeals has "noted that '[i]n extreme circumstances—for instance, if the district court had sentenced [the defendant] to a public flogging—due process may require that an appeal be heard despite a previous waiver.'" Salgado, 799 F. App'x at 807 (quoting United States v. Howle, 166 F.3d 1166, 1169 n.5 (11th Cir. 1999)). Nonetheless, the Eleventh Circuit has "'consistently enforced knowing and voluntary appeal waivers according to their terms.'" Id. (quoting United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006)). A court is to "apply 'a strong presumption that [a defendant's] statements made during the [plea] colloquy are true.'" Id. (quoting United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)).

The pertinent provision of Graham's plea agreement states:

Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground. The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum[;] (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

Crim. Case, Doc. 29 at 9–10.  The record clearly indicates Graham understood the implications

of entering a guilty plea.  As part of the colloquy Judge Wood had with Graham during his Rule

11 hearing, Judge Wood and Graham had the following exchange, after Graham was under oath:

> THE COURT: I do want to emphasize something that Mr. Gilluly mentioned, and
> that is, contained in this plea agreement that you're presenting is a waiver of
> certain appellate rights.  It states you waive your right to a direct appeal of your
> conviction and sentence on any ground.  However, there are three exceptions to
> that waiver.  That is if, but only if, one of these three things were to occur you
> would get a direct appeal right pursuant to this plea agreement.
>
> Number one, if I sentence you above the statutory maximum, you could appeal
> that directly.  Number two, if I sentence you above the advisory guideline range
> as found by me, you could appeal that directly.  Or Number [three], if the
> Government were to file a direct appeal, then you, too, could file one.  Otherwise,
> pursuant to this plea agreement, you waive all other direct appellate rights.
>
> Understand?
>
> THE DEFENDANT: Yes, Your Honor.

Crim. Case, Doc. 33 at 31–32.  Judge Wood reminded Mr. Allen and Graham of his appeal

waiver during sentencing proceedings.  Crim. Case, Doc. 42 at 5, 21.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong

presumption that the statements made during the colloquy are true" and his plea is knowing and

voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).

Graham's Rule 11 colloquy with the Court and the provisions of his plea agreement make clear

Graham understood the full significance of the appeal waiver.  As Graham stated during his Rule

11 colloquy, Mr. Allen reviewed the indictment and plea agreement and spoke in general terms

about the Sentencing Guidelines with Graham.  Crim. Case, Doc. 33 at 14–15, 16.  Thus, the

collateral attack waiver is enforceable.  See Williams, 396 F.3d at 1342 & n.2; see also United

States v. White, 307 F.3d 336, 343 (5th Cir. 2002) (An ineffective assistance claim survives a

waiver of appeal "only when the claimed assistance directly affected the validity of that waiver or the plea itself.").

Graham was not sentenced to a term of imprisonment higher than the advisory Guidelines' range Judge Wood found to be appropriate, he was not sentenced above the statutory maximum sentence, and the Government did not file any appeal.  Graham's sentence of 188 months' imprisonment fell within the 188- to 235-month Guidelines range, as found by Judge Wood, and well below the statutory maximum sentence of 20 years' imprisonment Graham could have faced.  See 18 U.S.C. § 2252A(a)(5)(B), (b)(2).  Thus, Graham's claim regarding Mr. Allen's alleged ineffective assistance by not filing an appeal falls squarely within the appeal waiver.

The Court turns to whether Graham sets forth a valid ineffective assistance of counsel claim against Mr. Allen for failing to file a notice of appeal on Graham's behalf at Graham's directive.  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim."  Johnson v. Scott, 68 F.3d 106, 109 (5th Cir. 1995).  Under the Strickland test, the petitioner must initially show counsel's representation fell below an "objective standard of reasonableness."  Strickland, 466 U.S. at 688. "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'"  Jones v. White, 992 F.2d 1548, 1557 (11th Cir. 1993) (quoting Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir 1991)).  In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel must be

evaluated by consideration of the totality of the circumstances.  Stanley v. Zant, 697 F.2d 955, 962 (11th Cir.1983).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different."  Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Strickland, 466 U .S. at 694.

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  "Even assuming that a rational defendant would not have wanted to appeal the case, [where a defendant] expressly communicated to his attorney his desire to appeal . . .[,] Flores-Ortega mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes."  Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

It is well-settled an attorney's failure to file a requested notice of appeal is per se ineffective assistance of counsel.  Flores-Ortega, 528 U.S. at 470, 483–86; Gaston v. United States, 237 F. App'x 495, 496 (11th Cir. 2007).  A defendant claiming ineffective assistance on that score need not demonstrate an ability to raise meritorious issues on appeal.  Flores-Ortega, 528 U.S. at 477–78.  Instead, he can prove ineffective assistance by showing a "reasonable

probability" he would have timely appealed had counsel not failed to file an appeal on his behalf. Id. at 484.  Further, even where a defendant has signed a waiver of direct appeal as part of his plea agreement (as Graham did in this case), he has no burden to show the issue he would have raised on appeal falls outside of that waiver.  Gaston, 237 F. App'x at 497; Gomez-Diaz, 433 F.3d at 793.

The post-conviction consultation certificate, which Graham signed on January 22, 2018, reflects Graham advised Mr. Allen he did not want to file an appeal.  Crim. Case, Doc. 35. Through that notice, Mr. Allen certified—and Graham agreed—Mr. Allen met with Graham, explained to Graham the appellate process and his rights to appeal his conviction and sentence, advised Graham of the advantages and disadvantages of filing an appeal, and thoroughly inquired of him about his interest in appealing.  Id.  After this consultation, Graham certified his agreement with these statements by printing and signing his name.  Id.  Graham has not denied any of the contents of this notice or otherwise contested the validity of this notice in any of his pleadings.  In addition, while Graham asserts Mr. Allen failed to have a "specific type of consultation" with him regarding an appeal, the record before the Court contradicts any such assertions.  Gomez-Diaz, 433 F.3d at 792; Crim. Case, Doc. 35.

The notice shows Mr. Allen fully explained the appellate process to Graham, apprised Graham of the advantages and disadvantages of an appeal, fully informed him of the consequences of that decision (including in a § 2255 proceedings like this), and attempted diligently to ascertain his wishes.  It also shows Graham expressly instructed Mr. Allen not to file an appeal.  Cf. Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea . . . .  [Consequently,] the representations of the defendant . . . constitute a formidable barrier

in any subsequent collateral proceedings.") (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 71–74 (1977)); <u>Rosin v. United States</u>, 786 F.3d 873, 878 (11th Cir. 2015) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence.").  In short, the undisputed post-conviction consultation certification establishes Graham's informed decision not to take an appeal and thwarts any claim Graham makes counsel was ineffective for failing to file an appeal.  <u>See</u> <u>Eubank v. United States</u>, No. CR414-005, 2016 WL 750344, at *1 (S.D. Ga. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1464578 (S.D. Ga. Apr. 13, 2016), *certificate of appealability denied*, No. 16-11933-F, 2016 WL 6246827 (11th Cir. Oct. 25, 2016) (section 2255 motion denied where movant faulted her lawyer for failing to directly appeal but notice of post-conviction consultation certification memorialized her informed decision not to take an appeal); <u>Eason v. United States</u>, No. CR613-007, 2014 WL 4384652, at *3 (S.D. Ga. Sept. 3, 2014), *report and recommendation adopted*, 2014 WL 4956680 (S.D. Ga. Oct. 2, 2014) (same); <u>see also</u> <u>Price v. United States</u>, No. CR614-016, 2017 WL 525869, at *4 (S.D. Ga. Feb. 8, 2017), *report and recommendation adopted*, 2017 WL 1393058 (S.D. Ga. Apr. 11, 2017) (notice of post-conviction consultation certification and attorney's affidavit regarding same rebut § 2255 claim counsel neglected to apprise movant of the advantages and disadvantages of filing direct appeal).

For all of these reasons, the Court should reject Graham's claim Mr. Allen rendered ineffective assistance by failing to file an appeal on his behalf.  Thus, the Court should **DENY** this portion of Graham's Motion.

## II.      Whether the Government Breached the Plea Agreement

Graham contends the Government breached the plea agreement, as the Assistant United States Attorney promised not to seek a mandatory minimum sentence of 10 years in prison. Doc. 1-1 at 5.  According to Graham, he rejected two previous plea agreements which contained a mandatory, minimum sentence, and the third plea agreement had a provision for a sentence range of 0 to 20 years' imprisonment.  Id.

The statutory maximum sentence Graham faced was 20 years in prison, yet he was warned he could face a mandatory minimum sentence of 10 years' imprisonment if he had a prior, qualifying conviction, as set forth in the plea agreement.  Doc. 4 at 25.  The Government points out that Graham agreed no one had promised him any sentence at the change of plea hearing.  Additionally, Graham was notified all his relevant conduct would be considered in fashioning a sentence, not just the facts underlying the charge to which he agreed to plead guilty. Id.

The Eleventh Circuit Court of Appeals has explained, "[A] plea agreement must be construed in light of the fact that it constitutes a waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea."  United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990) (internal quotation marks omitted).  "A material promise by the government, which induces a defendant to plead guilty, binds the government to that promise."  United States v. Thomas, 487 F.3d 1358, 1360 (11th Cir. 2007) (citing Santobello v. New York, 404 U.S. 257, 262 (1971)).  Hence, the government breaches a plea agreement when it fails to perform the promises on which the plea was based.  "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea."  United States v. Boatner, 966 F.2d 1575, 1578

(11th Cir. 1992).  Courts are to apply an objective standard to "decide whether the government's actions are inconsistent" with the defendant's understanding of the plea agreement rather than reading the agreement in a "'hyper-technical' or 'rigidly literal' manner."  United States v. Hunter, 835 F.3d 1320, 1324 (11th Cir. 2016) (internal citations omitted); Torres v. United States, No. 613CR123, 2018 WL 11000923, at *2 (M.D. Fla. Mar. 15, 2018).

Graham fails to show the Government breached the terms of the plea agreement based on the presence of a statutory minimum sentence.  Just five days after the United States Attorney's Office notified the Court the parties reached a plea agreement, the Government filed an amended penalty certification indicating Graham could face a mandatory minimum sentence of not less than 10 years in prison under count 3 of the indictment if he had a previous qualifying conviction.  Crim. Case, Doc. 19 at 1–2.  This notification was also in the plea agreement, which Graham and Mr. Allen executed on May 18, 2017.  Crim. Case, Doc. 29 at 6, 13.  In addition, a term of the plea agreement notified the parties Graham was not promised any sentence, the Court was not bound by any estimate or recommendation, and the Court could impose a sentence up to the statutory maximum.  Id. at 6.  The only promises the Government made as part of the plea agreement were to not object to any recommendation from the probation officer for an offense level reduction for acceptance of responsibility and to move the Court to dismiss the other three counts of the indictment.  Id. at 7, 8.  In other words, there is nothing before the Court beyond Graham's self-serving and conclusory statements the AUSA even made any such promise or had an obligation to fulfill any putative promises outside of the plea agreement.

In addition, at the Rule 11 hearing, Judge Wood discussed with Graham his rejection of two prior plea agreements due to statutory sentencing ranges.  Crim. Case, Doc. 33 at 15.  Judge Wood summarized the indictment, the count to which Graham offered to plead guilty, and what

the Government would have to prove as to that count.  Id. at 21–22.  Graham stated he

understood and admitted these elements were satisfied as to this count.  Id. at 22.  Judge Wood

then instructed Graham the maximum sentence she could impose by statute was 20 years in

prison but, if Graham had a prior, qualifying conviction, he faced a mandatory statutory

minimum sentence of 10 years.  Id. at 23.  Judge Wood reiterated Graham faced a mandatory

minimum sentence of 10 years in prison if he had a qualifying, prior conviction.  Id. at 23–24.

Graham stated he understood and no one had promised an exact sentence.  Id. at 24, 25.  Again,

Judge Wood explained the statutory penalty Graham faced—20 years' maximum and 10 years'

mandatory minimum if he had a prior conviction—and Graham stated he understood.  Id. at 29–

30.  After Mr. Allen and the Assistant United States Attorney stated they were not sure whether

Graham had a prior qualifying conviction, Judge Wood again addressed Graham, stating,

"[T]hat's something I want to make sure you understand, that, right this moment, no one can

promise you [the statutory mandatory minimum provision] won't apply.  That's why I have

repeatedly gone over it with you, because, in fact, it may apply."  Id. at 31.  Again, Graham

stated he understood.  Id.  Judge Wood addressed Graham again:

> THE COURT: Mr. Graham, what everybody is saying is you need to understand
> that you may be subject to that 10-year mandatory minimum.  It's just hard to tell
> until Probation receives the actual—what we call Shepard copy of those
> documents, the real copy of your criminal history, so that they can look at it and
> we can—I can hear argument from the [d]efense about it, argument from the
> [p]rosecution about it.  And then I'll make the decision of whether that qualified
> for it or not.
>
> Understand?
>
> [GRAHAM]: Yes, Your Honor.
>
> THE COURT: I would hate for you to have the misimpression that [the statutory
> minimum's] just not going to apply to you or your attorney has somehow
> promised you that it's not going to apply to you.  Clearly, he hasn't.  And clearly,
> the Court has informed you that that's something that cannot be guaranteed to

you.  And if you want to plead guilty, you're pleading guilty not knowing whether that will or will not apply.

Understand?

[GRAHAM]: Yes, ma'am.

THE COURT: All right.  With that understanding in mind, [do] you still want to proceed . . . with your guilty plea?

[GRAHAM]: Yes, Your Honor.

Id. at 34–35.

Graham's colloquy with the Court during his Rule 11 hearing makes it abundantly clear he understood it was possible he would face the statutory minimum if he had a prior, qualifying conviction.  Judge Wood stressed this possibility more than once during the Rule 11 proceedings. And the Government amended the penalty certification to indicate Graham could face a mandatory minimum sentence of 10 years' imprisonment if he had a prior, qualifying conviction just five days after notifying the Court the parties had reached a plea agreement.  Graham's counsel, Mr. Allen, also emphasized he had not made any guarantees about the application of the mandatory minimum, confirming he explained to Graham the minimum might apply.  Thus, Graham's assertion the Government breached the plea agreement is utterly baseless and contradicted by the record.[8]  The Court should **DENY** this portion of Graham's § 2255 Motion.

## III.    Motion for Production of Documents and Motion to Compel, Docs. 12, 17

Graham asks the Court to order the Government or the Clerk of Court to produce certified copies of the grand jury indictment return and foreman's certificate of concurrence;

---

[8]      The Court notes, under the advisory Guidelines, Graham's total offense level of 35, PSR, ¶¶ 15–30, with a criminal history category of I (excluding any consideration of Graham's criminal history) would have resulted in a range of 168 to 210 months' imprisonment.  Sent. Table (2016 Guidelines). Between the advisory Guidelines' range and Judge Wood's consideration of the statutory sentencing factors of § 3553, Graham would have faced a sentence higher than the mandatory minimum of 120 months in prison.

state search warrants, affidavits, and returns; federal wiretap and search warrants, affidavits, and returns; all state and federal subpoenas; and the name and address of "the true injured party." Doc. 12 at 1–2. Graham asserts Mr. Allen "conveniently" left the discovery packet in his car during the Rule 11 proceedings. Id. at 2. Even though Judge Wood ordered the United States Marshal to ensure Graham was able to see this file, he claims he never had the chance to review the contents of this file, despite several requests made to Mr. Allen. Id. Graham requests he be given free copies of the requested documents since he has never received a copy. Id. at 3. In his Motion to Compel, Graham seeks to compel Mr. Allen to provide copies of the same documents. Doc. 17 at 1–2.

Prior to filing his § 2255 Motion, Graham filed a request with the Court to have Mr. Allen produce certain documents to him. Crim. Case, Doc. 47. Mr. Allen informed the Court he had provided Graham with all of the requested documents, other than a copy of the PSR, as he was precluded from copying or forwarding that document. Crim. Case, Doc. 48. In addition, Mr. Allen stated he offered to provide all permissible documents to Graham on several occasions since the beginning of the case, yet Graham had "continuously refused to accept them." Id. Judge Wood denied as moot Graham's motion. Crim. Case, Doc. 49; see also Crim. Case, Doc. 33 at 19–20 (Mr. Allen informing the Court he had tried to give Graham copies of the discovery folder, but Graham did not want them; Mr. Allen noting his belief Graham had everything the Government had; and Judge Wood offering Graham the opportunity to see anything he wanted to see, though noting that was up to him).

Given Mr. Allen's representations, the record before the Court contradicts Graham's assertions and demonstrates Graham is not entitled to the relief requested. Mr. Allen has offered to provide Graham with all documents he was able to provide. Nevertheless, to the extent the

requested documents here differ from those Graham asked for prior to the filing of the § 2255 Motion, Graham is not entitled to free copies of the requested documents.  <u>Glover v. United States</u>, CV418-020, 2018 WL 3685505, at *1–2 (S.D. Ga. July 6, 2018) (denying requests for free transcripts and discovery materials in the § 2255 context) (citing 28 U.S.C. § 753(f)), <u>United States v. MacCollom</u>, 426 U.S. 317, 326–28 (1976), and <u>Arthur v. Allen</u>, 459 F.3d 1310, 1310 (11th Cir. 2006)).  Graham offers nothing to indicate he is entitled to these documents.  If, however, he wishes to obtain copies of any documents filed upon the record and docket of this Court, he should request these copies from the Clerk of Court, who will in turn provide Graham with a receipt for the cost of these copies which must be prepaid.

In addition, Graham stated during the Rule 11 hearing he "already looked at the file folder" Mr. Allen "presented to me," noting only that the folder did not contain the arrest warrant.  Crim. Case, Doc. 33 at 37.  Further, Graham represented he had the opportunity to obtain subpoenas through the Clerk of Court for the production of the Glynn County evidence.  <u>Id.</u> at 18.  Yet, it appears Graham has not availed himself of this opportunity.  Moreover, as part of his plea agreement, Graham waived any right to request information about the investigation and prosecution of his case.  <u>Id.</u> at 27; Crim. Case, Doc. 29 at 3.  In sum, the Court **DENIES** Graham's Motions.

## IV.     Motion for Default Judgment, Doc. 14

Graham asserts the Government did not respond to his "affidavit" in support of his § 2255 motion, doc. 13, within 30 days.  Doc. 14.  As a result, Graham asserts the Government is in default and estopped from "any future rebuttal."  <u>Id.</u> at 2.

While the Government did not file a specific response to Graham's affidavit, the Government did respond to Graham's § 2255 Motion.  Doc. 4.  Graham's affidavit merely

provides more details for his claims, but the Government was not required to file a response. Regardless, the entry of default is not contemplated in habeas corpus proceedings.  Latif v. Gartland, Civil Action No. 5:17-cv-69, 2017 WL 4227403, at *1 n.2 (S.D. Ga. Aug. 28, 2017), adopted by 2017 WL 4209730 (Sept. 19, 2017); see also Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987) (finding a default judgment is not contemplated in habeas corpus cases); Goodman v. Keohane, 663 F.2d 1044, 1048 n.4 (11th Cir. 1981) (rejecting petitioner's argument the government's tardiness in responding to petition entitled him to habeas relief); Cruz v. United States, 1:13-CV-1843, 1:11-CR-0261, 2013 WL 6145266, at *1 (N.D. Ga. Oct. 23, 2013) (recognizing default judgment is not contemplated in § 2255 proceedings), adopted by 2013 WL 6097570 (N.D. Ga. Nov. 20, 2013).  The Court, therefore, **DENIES** Graham's Motion for Default.  Doc. 14.

## V.   Motion for Evidentiary Hearing, Doc. 16

Graham captioned one filing in this matter as a Motion for an Evidentiary Hearing, but he merely recounts previous filings he has made.  Doc. 16.  He appears to request the Court conduct a hearing regarding the warrants he claims "did not exist[,]" resulting in this Court lacking jurisdiction over his criminal prosecution.  Id. at 7.

Section 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" Winthrop-Redin, 767 F.3d at 1216 (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a movant is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations

unsupported by specifics or contentions that in the face of the record are wholly incredible."

Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v.

United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).  Because Graham's claims lack merit as

a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing

is necessary.  Consequently, the Court **DENIES** Graham's Motion for an evidentiary hearing.

## VI.   Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Graham leave to appeal *in forma pauperis*.  Though Graham

has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's

order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in*

*forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An

appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good

faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be

judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla.

1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or

argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is

frivolous when it appears the factual allegations are clearly baseless or the legal theories are

indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984

F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is

"'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323

(11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown

v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9,

2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Graham's Motion and other filings and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Graham a Certificate of Appealability, Graham is advised he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as

there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.

Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

### CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Graham's § 2255

Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of

dismissal, and **DENY** Graham *in forma pauperis* status on appeal and a Certificate of

Appealability.  I **DENY** Graham's Motions for Production, for Default Judgment, for

Evidentiary Hearing, and to Compel.  Docs. 12, 14, 16, 17.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included.  Failure to file

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual

findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to

challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to

file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the

objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify, in

whole or in part, the findings or recommendations made herein.  Objections not meeting the

specificity requirement set out above will not be considered by the District Judge.  A party may

not appeal a Magistrate Judge's report and recommendation directly to the United States Court of

Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of November, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA